WILLIAM H. FLYNN ET AL. v. THE CITY OF DETROIT.

*Adverse possession—License—City streets.*

1. It is settled in this State that title may be acquired by adverse possession of property within the limits of streets; citing *City of Big Rapids v. Comstock*, 65 Mich. 78; *Village of Essexville v. Emery*, 90 Id. 183.

2. The use of a portion of the street in front of a lot, in a manner inconsistent with and in violation of the statute giving the lot-owner license to use it in a prescribed manner, may establish his right to the land so used by adverse possession.

Appeal from Wayne.  (Hosmer, J.)  Argued November 4, 1892.  Decided December 2, 1892.

Bill to quiet title.  Defendant appeals.  Decree affirmed. The facts are stated in the opinion.

*George W. Radford* (*Edward A. Barnes,* of counsel), for complainants.

*John J. Speed,* for defendant.

Long, J.    This bill is filed to quiet title.

The land in controversy is a strip 4.97 feet in width in front of, and claimed by complainants to be a part of, lot 66 of section 7 of the Governor and Judges' plan of the city of Detroit.    This lot, as platted, is situated on the corner of Barclay Place and John R. street.    Complainants derived their title through Hugh Flynn, deceased, who was the husband of Ann Flynn, the other complainants being the children of Hugh and Ann Flynn.    Hugh Flynn derived his title under a deed from Angelica Chapaton, made March 11, 1846, describing the land as—

"All that part of lot number sixty-six (66) on which there is a frame house, and which was conveyed by Daniel J. Campau to Edgar F. Randolph in trust for Stewart C. Marsh, John Compton, and John M. Burdsall, by deed dated August 11, 1843."

At the time the deed was made to Hugh Flynn, in March, 1846, he went into possession, and he and the complainants herein have occupied the premises continuously since that time.    No question is raised but that the title to lot 66 vested in the complainants through this chain of title, and that they have continuously occupied the house which is still standing, thereon.

At the time this deed was made the house was standing over upon the strip of land in controversy about one foot, and still remains there; the balance of the strip being fenced in by a picket fence commencing at the house, and continuing around the strip to the other side, completely inclosing it, with no opening from the street into it or from the house into it.    The city claims the strip to be a part of John R. street, and, making that claim, the complainants, to quiet the title, filed this bill.

OCTOBER TERM 1892.

John R. street, it is claimed by the city, was originally platted 60 feet in width, but that it has never been opened and maintained that width; that this strip has always been used as a grass plat and for purposes of ornament, and that complainants and their grantors have been allowed to use and occupy it for that purpose by express permission under an act of the Governor and Judges, passed May 18, 1807, entitled "An additional act concerning the town of Detroit," and that such occupation or use conferred no title upon the complainants or their grantors; that John R. street has existed, and been worked, paved, and traveled, for more than 50 years as a public highway, and that this strip is a part thereof, and the inclosure should be presumed to have been made under the license of the act. above referred to, and the subsequent act of November 7, 1815 (1 Terr. Laws, pp. 286, 289), and the subsequent regulating ordinances of the common council, and could not create title by adverse possession.

The act of 1807 provided that the first seven feet of the sidewalk space should be reserved for—

" Erecting porches in the front of houses; for doors of cellars; for an area to allow light to apartments below the level of the ground; for a grass plat or shrubbery; or for other purposes of either utility or ornament, as the inclinations and taste of the proprietor may direct."

The act of 1815 provided that no erections on this space, except porches, should exceed 50 inches in height. It was further provided that—

"Every person placing fencing or paling, not exceeding 50 inches in height, on the front line of the ten [seven] feet, shall also place another fence or paling on the rear line of the said ten [seven] feet, along the line of his lot, of at least equal height, and the said ten [seven] feet shall not be severed from the street."

It is claimed by the complainants that the use to which the disputed space was put was not within the license of

these acts. It appears that the house was already built upon a part of this trip when Hugh Flynn became possessed of the property, and the whole strip was inclosed with the lot, and not separated from it by fence or any other structure. The inclosing of the strip with the lot cannot be said to be within the terms of these acts, and no presumption can arise from these facts that complainants' possession and continued use of the premises was under the license of the acts. The act of 1815 expressly prohibited such inclosures as shown, and the manner in which the premises have been inclosed and used by the complainants and their grantors is entirely different from the license of the acts. Complainants had no right or license under the acts to erect a building or maintain one upon that strip; they had no right to keep and maintain a fence of that height in front of the strip without separating the strip from the lot with a fence of equal height; and yet both were done, and for nearly 40 years they have continued in open violation of the acts.

In *People v. Carpenter*, 1 Mich. 273, it was held that an iron stairway on the front of a building, and within the limits of the street, was not within the license conferred by these acts.

It is settled in this State that title may be acquired by adverse possession of property within the limits of streets. *City of Big Rapids v. Comstock*, 65 Mich. 78; *Village of Essexville v. Emery*, 90 Id. 183. The ordinances of the city of Detroit have for more than 30 years prohibited encroachments upon the public streets, and yet no steps have been taken to compel the removal of this fence until this suit was brought, so far as shown by this record.

It would seem that these facts establish beyond controversy the right of complainants to this land by adverse possession.

It is suggested that inasmuch as the deed to Hugh Flynn describes the land as "all that part of said lot on which there is a frame house, and which was conveyed," etc., it takes with it the land on which the building stands, and the whole of it; that is, this building being expressly conveyed by the deed, and it standing in part on the strip in controversy, it carries with it the whole strip. The following cases hold this doctrine: *Bacon v. Bowdoin*, 22 Pick. 401; *Allen v. Scott*, 21 Id. 25; *Rogers v. Snow*, 118 Mass. 118; *Oliver v. Dickinson*, 100 Id. 114. We need not discuss this proposition, however, as it is apparent that the complainants cannot be said to have entered or held under the license of these acts, and consequently have the right to set up their adverse possession, which has been fully established. The court below very properly entered decree in favor of complainants.

The decree will be affirmed, with costs.

GRANT, MONTGOMERY, and DURAND, JJ., concurred. McGRATH, J., did not sit.