## WEBER *v.* CITY OF DETROIT.

1. ADVERSE POSSESSION—STATUTE OF LIMITATIONS—STREETS AND ALLEYS—PERMISSIVE USER.

Occupancy of an alley by a lumber dealer who piled his lumber, which was continually being changed or removed, partly in the alley and partly on his own land, both being portions of a common at the time of purchase, constitutes a permissive user of the unused public way and not adverse possession, in the absence of a claim or color of title.

2. SAME.

To transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention.

3. SAME.

No rights are acquired by the public in land owned by a complainant who built a fence to keep people out of his lumber yard, not on the line of the alley but within the boundary of his own property, and without any reference thereto.

Appeal from Wayne; Murphy, J. Submitted October 14, 1909. (Docket No. 84.) Decided December 10, 1909.

Bill by Joseph F. Weber against the city of Detroit and others to quiet title to land. From a decree for complainant, defendants appeal. Reversed.

*Jasper C. Gates,* for complainant.

*Walter Barlow* (*P. J. M. Hally,* of counsel), for defendants.

The public alley in which is situated the pieces of land now in controversy is in a block of the city of Detroit bounded on the north by Gratiot avenue and Maple street, on the east by Rivard street, on the south by Sherman street, and on the west by Hastings street. The alley ex-

tends from Sherman street in a northwesterly direction to near the middle of the block parallel to Gratiot avenue, from which point it extends east to Rivard street. Complainant owns the east half of lot 190, the entire of lots 191, 192, 193, and 194; the first four lots fronting on Gratiot avenue, while lot 194 fronts on Maple street. He also owns lots 183, 184, and 185, fronting on Sherman street. These lots are situated to the south of the alley, while the lots first named are to the north of the alley.

This is a public alley, and the defendant city entered into a contract for paving it. The contract covered land as platted, but to which the complainant claims title by adverse possession. Four pieces or strips of land are involved, two upon the north of the alley and two upon the south. Counsel for defendants concede that complainant has obtained title by adverse possession to the strips north of the alley, which have been for more than twenty years occupied by his buildings.

Complainant purchased lots 183, 184, and 185 in 1869. The entire land there then was an open common. There were no stakes or other monuments locating the alley. Complainant used lots 184 and 185 as a lumber yard. He made no attempt to find the south boundary of this alley, or to locate the lumber piles with any reference thereto, but, it being an open common, located them at his pleasure. These lumber piles encroached upon the alley. His occupancy is solely that of the lumber piles piled upon pieces of timber laid on the ground. These piles were constantly changing as they were sold and repiled with other lumber. At the extreme western end of lot 185 he located four posts, which, it appears, have been there many years. One of these posts was in the southern line of the alley and on the south line of Sherman street. The other three were located in the alley at irregular distances from the south line of the alley as platted. This alley has been in daily use by the public and the complainant. Complainant describes his occupancy as follows:

"*Q.* These irregular lines on this Exhibit 2, marked 'post and lumber piles,' these are movable?

"*A.* Yes, sir.  North of lots 185 and 184 these are movable lumber piles and piles of posts.  They comprise part of our stock in trade there.  They are merchandise. I don't suppose the identical posts and piles of lumber that the map shows were there 40 years ago.  It is likely some of the foundations went down in the ground, maybe. The material itself that is above the surface is all the time changing.  Sometimes there is more and sometimes less there.  Whenever we bring in new material there, we pile it up there, and, whenever we sell it, we take it from those piles.  *  *  *

"*Q.* But that stuff there now is all merchantable stuff?

"*A.* Yes, sir.  I don't think there would be any lumber there that was there 15 years ago, but I would not be so sure about the house blocks in the bottom there.  There might be some of those there.  *  *  *

"*Q.* But, as a usual thing, they are not there but a few months?

"*A.* Oh, yes; longer than a few months.  Sometimes they would be moved two and three times a year.  Sometimes they wouldn't be.  It would depend upon the use and sale of the particular kinds of lumber.  That is the way that has been occupied for 40 years north of that line of fence in the rear of lots 184 and 185.  It has not been occupied in any other way by me, except in that particular way."

When the city was preparing to pave this alley, it claimed that the space occupied by the complainant's lumber piles was in the alley.  Complainant thereupon filed this bill to quiet title.  The court entered a decree for complainant.

The irregularity of the northerly boundary of the strip claimed appears from the description found in the decree, as follows:

"Beginning at the southwest corner of lot 185, of the plat of the subdivision of the Louis Moran farm, between Fort and Elizabeth streets; thence south 60 deg. 00' west along the northerly line of Sherman street 1.20 feet; thence north 60 deg. 14' west, 4.00 feet, to a post standing in the ground; thence north 10 deg. 30' east, 9.53 feet, to a post; thence north 45 deg. 02' east, 7.26 feet; thence

north 3 deg. 55' west, 3.60 feet; thence north 47 deg. 25' east, 19.41 feet; thence north 53 deg. 07' west, 4.03 feet; thence north 46 deg. 28' east, 10.44 feet; thence north 60 deg. 14' west, 1.00 foot; thence north 30 deg. 37' east, 40.00 feet; thence north 29 deg. 46' east, 14.6 feet; thence south 60 deg. 14' east, 3.36 feet, to the northwesterly line of said lot 185; thence north 29 deg. 46' east, along the last said line, 20.4 feet; thence north 60 deg. 14' west, 3.40 feet; thence north 29 deg. 46' east, 17.75 feet; thence north 50 deg. 14' west, 1.00 foot; thence north 29 deg. 46' east, 17.75 feet; thence south 60 deg. 14' east, 4.40 feet, to the northwesterly line of said lot 185; thence south 29 deg. 46' west, along the last said line, to point of beginning."

GRANT, J. (*after stating the facts*). Counsel for complainant cites and relies upon the following authorities: *Gregory* v. *Knight*, 50 Mich. 61, 63, 64 (14 N. W. 700); *Village of Essexville* v. *Emery*, 90 Mich. 183, 185, 186 (51 N. W. 204); *Flynn* v. *City of Detroit*, 93 Mich. 590 (53 N. W. 815); *Leonard* v. *City of Detroit*, 108 Mich. 600, 601, 602 (66 N. W. 488); *Vier* v. *City of Detroit*, 111 Mich. 646, 647, 648 (70 N. W. 139). In *Gregory* v. *Knight* the land was occupied by a "rail fence, stone-row, rail piles, hay barn, and sheds." In *Flynn* v. *City of Detroit* a house was standing about one foot upon the land in controversy, and the balance of the strip was inclosed by a picket fence completely inclosing it with no opening from the street into it. In *Vincent* v. *City of Kalamazoo*, 111 Mich. 230 (69 N. W. 501), the strip of land involved had been covered by a building for 30 years. In *Vier* v. *City of Detroit* the opinion states that the case possesses the essential features of *Vincent* v. *City of Kalamazoo, supra*.

Referring to that case, it will appear that the ground in controversy had been covered with buildings for about 30 years. In this case there are no buildings or permanent improvements. The ground was occupied exclusively by personal property which complainant placed there for his own convenience for sale, and which was

constantly changing. The merchandise thus placed was changed from three to four times a year. As soon as one pile was sold, it was replaced with other lumber. There was nothing in appearance to indicate a permanent, hostile, or adverse possession. It is common knowledge that merchants are permitted, without objection by the public, to occupy parts of streets and sidewalks in front of their stores to exhibit goods for sale. It has never been held that by so doing they could acquire title by adverse possession. They occupy these portions of the public thoroughfares by permission, and not in hostility to the public. The ground when the plaintiff purchased it was an open common. He did not know where the line was. He purchased his lots by number, and therefore with reference to the plat, which showed that they were bounded on the south by Sherman street and on the north by the alley. He took no pains, however, to ascertain that line or to pile his lumber in accordance with any straight line. Some piles extended into the alley farther than others. That he supposed, when he began to pile his lumber, that he was occupying his own land upon the south side of the alley, is absurd. As shown in the description of the land in the decree, the northern boundary of the strip is a zigzag line extending from the west corner of lot 185 through the alley to a point at or near the northeast corner of said lot, while the southern boundary of the strip is the lot line as platted. He could not have believed that he was occupying land to which he had any title. The apparent fact is that he entered upon this land, then an open common, without any view of his own lot line. No one was interested to complain. He notified no one that he occupied this land with his lumber piles under claim or color of title. He had no claim or color of title. The presence of this movable personal property, placed there for his own convenience in selling and moving, is no notice of any claim or title, or of a possession hostile to the rights of the public. His statement that he claimed title is of no consequence. Title to lands cannot be maintained by an

unexpressed claim existing in the mind of the claimant. His adverse possession could only commence when he had in some manner notified the public of his adverse claim. *City of St. Joseph* v. *Seel,* 122 Mich. 70, 74 (80 N. W. 987).

"The occupancy must be exclusive, known to, and against the will and consent of, those interested, and whose right it is to contest." *Marble* v. *Price,* 54 Mich. 466 (20 N. W. 531).

We said in *Fuller* v. *City of Grand Rapids,* 105 Mich. 529 (63 N. W. 530):

"Owners of adjacent lands acquire no permanent rights in the public streets by the erection of structures for their own use and benefit. So long as the space so occupied is not required for public use, they are usually permitted, but, when the public demands it for the use for which it has been condemned or dedicated, the private use must go, and the structures be removed. The opportunity to remove them is all the right the law gives the owners."

The language there used is, of course, subject to acquiring title by adverse possession under the authorities above cited.

Under complainant's contention, every occupancy by an adjoining owner of the unused portion of a public highway or street along its sides for the storage or display of merchandise would result in depriving the municipalities of a portion of their streets if such occupancy were continued for the statutory period. Such holding is not in accord with authority or sound reason.

"To transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner and such assertion must be brought to his attention." 14 Cyc. p. 1152.

It follows that the complainant has not title by adverse possession, but had only a permissive occupancy which ceased when the public demanded the use of the entire alley.

It appears from the record that complainant built a

fence which is, according to his evidence, south of the south boundary line of the alley, as platted, and on his own ground. He testified that this fence was not constructed with any reference to the boundary line, but for the purpose of keeping people out of his yard, particularly boys who were accustomed to go to a pile of gravel, pick up stones, and throw them at the windows of his buildings. The city contends that this fence should constitute the boundary line. Probably this fence, like the piles of lumber, was not located with any reference to the boundary line. Complainant has obtained no rights upon the city's highway. Neither has the city obtained any rights to complainant's land by reason of the fence. The boundary line as established by the plat is the boundary line between the alley and complainant's lots, 184 and 185.

The decree will be reversed, with costs of this court, and entered in accordance with this opinion.

BLAIR, C. J., and MOORE, MCALVAY, and BROOKE, JJ., concurred.