PASTORINO *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—STREETS—ADVERSE POSSESSION—PRE-SCRIPTION.

Act No. 46, Pub. Acts 1907 (5 How. Stat. [2d Ed.] §§ 14133, 14134), enacting that rights by prescription might not be thereafter obtained in public streets, changed the pre-existing rule in Michigan and brought the law into con-formity with the general rule recognized by the weight of authority.

2. SAME—FRUIT-STAND—DEFINITION.

The word "fruit-stand" signifies a place where fruit is sold at retail—a place where the business is conducted, the pursuit being closely related to hawking: the business of one who sells or offers goods for sale on the public street, by outcry or by exposing the wares, or by placards, labels, signals, etc.

3. SAME—NUISANCE—CITIES.

A fruit-stand maintained in a street of the city of Detroit without permission and in violation of a municipal ordi-nance prohibiting persons from obstructing or incumber-ing streets and other public places with buildings, boxes and like objects, was an encroachment and constituted a public nuisance.

4. SAME—PRESCRIPTION—ADVERSE USER.

 While adverse title may be acquired through possession held by a tenant, the party claiming presciptive title must show a disseisin and unequivocal assertion of title in himself as against the original holder of the title; and as bearing upon the adjacent owner's claim of right to part of a public street in support of his title, it is important to ascertain whether any notice was ever given to the municipality 'of the alleged claim.

5. NUISANCE—STREETS—PRESCRIPTION.

 A fruit-stand upon a public highway is not in its nature such a permanent obstruction that rights of prescription can be based upon its maintenance.

6. SAME—MUNICIPAL CORPORATIONS—POLICE POWER.

 Such a structure on the sidewalk is a nuisance which may be abated after proper notice, and the objectionable object may be summarily removed from the street.

Appeal from Wayne; Hally, J. Submitted June 17, 1914. (Docket No. 90.) Decided July 24, 1914.

Bill by Celestino Pastorino against the city of Detroit and others for an injunction and other relief. From an order sustaining a demurrer to the bill of complaint, complainant appeals. Affirmed.

*Joseph T. Schiappacasse,* for complainant.

*Richard I. Lawson,* Corporation Counsel, and *W. E. Tarsney,* Assistant Corporation Counsel, for defendants.

STEERE, J. This case involves the question of title by adverse possession claimed to have been obtained through encroachment upon a public street of the city of Detroit.

Complainant, claiming a title in his landlord by prescription and a resulting right in himself as lessee to the peaceable possession, enjoyment, and use of a location occupied by him as a fruit-stand beyond the street line of a certain corner lot in the business dis-

trict of said city, filed his bill of complaint in the circuit court of Wayne county in chancery, asking an injunction to restrain the municipal authorities from forcibly ejecting and removing him and his fruit-stand from said premises, as was threatened. From an order sustaining a demurrer to and dismissing said bill of complaint, he brings the case here for review.

Briefly stated, the bill of complaint alleges, in proper form and apt language, that complainant leases a place for and owns a fruit-stand on the north-west corner of Jefferson avenue and Randolph street in said city, on the front of and adjoining lot 12 of section 1 of the Governor and Judges' plan of the city of Detroit; that said fruit-stand is located upon the sidewalk in front of said lot occupying a width of two feet and four inches and a length of about eight feet from the corner on each street adajacent to the lot line; that the premises which said fruit-stand covers in said street in front of said lot have been occupied as a fruit-stand, under a lease from the owners of said lot, continuously since March 27, 1890, by successive fruit venders, each successor buying said stand from a previous owner and attorning during his occupancy as tenant to the owner of the lot; that complainant himself first purchased the fruit-stand from a prior owner, and became a tenant on April 29, 1900, and was in possession until September, 1908, when he sold the same to one John Pastorino, who was in posses-sion until May 12, 1913, when complainant bought him out and has since continued in the occupation of said premises, paying the owner of the adjacent lot rent therefor until the time of filing this bill. Con-tinuous occupation, use, lease, and payment of rent for the statutory period are positively stated, and it is averred that:

"Through your orator and the other prior owners or lessees of the said stand, by reason of continuous payments of rent to the owners or lessees of said lot

the owners of said lot were in actual, visible, open, and notorious, distinct, exclusive, and continuous, hostile and adverse possession of said premises occupied by the said stand."

Said bill recites certain action by the city council looking to abating encroachments on streets, and requiring that notice be given to all parties occupying and obstructing the streets and sidewalks with shoe-shining stands, vending stands, booths, etc., to vacate within 30 days from service of notice, directing the commissioner of public works and chief of police of said city to forcibly remove and eject all those not complying with said notice, and to remove all obstructions from said streets; that said officials have served the directed notice on John Pastorino, complainant's assignor, and have informed complainant of their intent to obey said orders and eject him accordingly, and are threatening so to do. Without going into further details, the bill sets forth at length the necessary facts and circumstances to fairly raise the issue of title by prescription here presented.

Defendants' demurrer specifies six reasons therefor, in substance that complainant has made out no title or right to relief, and has but a permissive use of the space occupied by him as a fruit-stand, title to which cannot be acquired by such permission; that the bill shows the premises occupied by the fruit-stand are in a public highway, the right of possession being claimed under a lease by an occupancy—

"Not adverse as against the owner of the adjoining property, and therefore complainant cannot acquire title to said premises by virtue of his lease; that complainant is not a proper party to file a bill of complaint, having acquired no interest in the subject-matter by virtue of his lease, and adverse possession cannot be obtained by the occupancy of a portion of a public highway with temporary obstructions."

While some technical questions are raised as to the

sufficiency of both the bill and demurrer, which might, if found controlling, temporarily dispose of this case, we conclude that the pleadings, considered as a whole, fairly put in issue the really important and vital propositions involved. Taking all the allegations of fact in complainant's bill as true, with the prayer for relief following, met by the portion of defendant's demurrer which urges that, under the facts stated, complainant nevertheless had from the city but a permissive use of the space occupied, that he acquired no title or right by virtue of his alleged lease, and that "adverse possession cannot be obtained by occupation of a public highway with temporary obstructions," the grounds of demurrer stated sufficiently apprise complainant of the city's contention, and fairly raise the questions of law which must dispose of this case in its final analysis.

Counsel for complainant in a very able and candid brief has clearly mapped out the field of fair contention within the range of conflicting authorities, frankly conceding an adverse line of decisions in other jurisdictions and urging his propositions squarely on the ground that in Michigan, contrary to the doctrine in many other States, title by prescription may be acquired to public property, and contending that this bill ought to be sustained, not only on the ground that title by adverse possession is shown, but also because the contemplated injury sought to be restrained is threatened under a claimed right to summarily remove complainant's fruit-stand from the street and abate it as a nuisance before any legal determination by competent authority that it is such; that the municipal authorities can and should first institute proceedings in the courts for a determination of that question and obtain an order of abatement, the existence of a public nuisance being a question to be first determined by a court or jury before summary measures can be taken by the officials to suppress it.

Considering first the question of title by adverse possession, as frankly conceded by complainant's counsel, the great weight of authority in the United States is to the effect that title by prescription cannot be acquired against a city. The principle upon which this rule is founded is said to be that a city merely holds title to its streets and possession of them in trust for the general public, and has no authority to dispose of them or their use for other purposes, by lease, license, sale, or gift. This is recognized as a general rule of law by most of the text-writers upon municipal corporations, and, with due notice of and deference to conflicting views in certain jurisdictions, is well stated in 3 McQuillin on Municipal Corporations, § 1396, as follows:

"There is much conflict in the decisions as to whether the right to a street or alley may be lost by adverse possession. In a few States such property is looked upon the same as any property held by an individual, and the maxim *nullum tempus occurrit regi* is considered not applicable to municipal corporations, so far as street and alleys are concerned, and hence title can be acquired to all or a part of a street by adverse possession. However, the great weight of authority is to the contrary, and it is held in nearly all the States that the rights of the public in a street or alley cannot be divested by adverse possession of another for the statutory period. * * * *"

Seven States, including Michigan, are enumerated as holding, or having held, contrary to the general rule. Several of these States, including Michigan, have been brought into line with the general rule by subsequent legislation, following the decisions rendered by their courts holding otherwise.

By Act No. 46, Pub. Acts 1907, it is provided that:

"Hereafter no rights as against the public shall be acquired by any person, * * * by reason of the occupation or use of any public highway, street or alley," etc.

While up to the time of enacting the above statute the law was well settled in Michigan, as stated, and must control as to rights arising prior to the act, in view of this legislation and the great weight of authority throughout the United States, we are not disposed to enlarge the scope or go beyond the imperative requirements of those former decisions, in passing upon prescriptive rights to a portion of a street, claimed to have matured before the act went into effect.

In some States it is held that all obstructions or encroachments upon streets which are not in some manner connected with or related to the use of the streets as public thoroughfares are *ipso facto* nuisances. Such is not the rule in this State. It has been held that many encroachments which otherwise have none of the characteristics of a nuisance *per se* are not to be treated as nuisances merely because intruding on public highways. *People* v. *Carpenter,* 1 Mich. 273; *Everett* v. *City of Marquette,* 53 Mich. 450 (19 N. W. 140).

Counsel for complainant cites as particularly appropriate and in point the following cases arising in the same city as the instant case: *Flynn* v. *City of Detroit,* 93 Mich. 590 (53 N. W. 815); *Leonard* v. *City of Detroit,* 108 Mich. 599 (66 N. W. 488); *Vier* v. *City of Detroit,* 111 Mich. 646 (70 N. W. 139). Those decisions and numerous others of this court squarely sustain said exceptional 'doctrine of title against the public by prescription, which is thus concisely stated in *Flynn* v. *City of Detroit, supra:*

"It is settled in this State that title may be acquired by adverse possession of property within the limits of streets. *City of Big Rapids* v. *Comstock,* 65 Mich. 78 [31 N. W. 811]; *Village of Essexville* v. *Emery,* 90 Mich. 183 [51 N. W. 204]."

It is to be observed in the cases cited, and others which may be found of like import where title has

been sustained under this rule, that the purpresture involved was not only untainted by any characteristics suggestive of a nuisance *per se,* but supported by clear proof of an unequivocal, exclusive, and distinct possession connected with, and arising out of, such uses and obstructions of a permanent nature as to make manifest the intent, and amount, in effect, to an assertion of a right hostile to the rights of the public, being initiated by inclosing an alley or part of a street by fences, or walls, the erection on the owner's lot of a building which projected with some of its parts over the street line, building steps rising above, and basement stairways through sidewalks on the street, etc.

Consulting complainant's bill for information as to the exact nature of his possession of the premises claimed, we find it described as located entirely within the limits and at the intersection of two public streets, adjacent to a corner lot. The bill alleges that he and his predecessors owned and operated a "fruit-stand" on a designated street corner continuously since 1890, occupying with, or by, "said stand" a strip of sidewalk next to said lot two feet four inches in width, extending back from the corner on each street about eight feet; that they leased said premises on which said fruit-stand was conducted from the owner of the adjacent lot, and paid rent therefor. It is also alleged in positive terms that the possession relied upon was open, hostile, adverse, etc., but such assertions, in their nature conclusions, are to be read and interpreted in connection with all other statements and allegations of facts appearing in said bill, which qualifies such possession by alleging that it was—

"through your orator and the other prior owners or lessees of said stand, and by reason of the continuous payments of rents to the owners or lessees of said lot."

So far as physical features of the fruit-stand are concerned, no definite information is given. What

fixtures, structures, appliances, or conveniences for the business occupied the space claimed is left to conjecture, or to inference from the name given to that which it is alleged was located there. The nature of the use, occupation, and possession of the space, and even of the business carried on there, is only disclosed by the allegations that complainant and those before him "owned," "operated," "conducted," "purchased," and "sold" said "fruit-stand" which was located on and occupied said premises. No special features or attributes being pointed out peculiar to this fruit-stand, it is to be taken for whatever that compound word generally implies, and its possession of the kind which generally goes with the operation or conduct of such an enterprise. While it can safely be said that those speaking the English language have in a general way a quite definite understanding that the word signifies a place where fruit is sold at retail, the lexicographers have given it but scant treatment. It is one of the many compound words coined by combining a word indicative of some minor line of business activity, designed to meet the temporary desires or necessities of the passers-by, with the word "stand," such as news-stand, lunch-stand, cigar-stand, flower-stand, peanut-stand, ice cream-stand, shoe shining-stand, hack-stand, etc.; the words thus combined signifying in a general way, when not further qualified, some place where the named business is conducted, whether indoors or out. It is a matter of common knowledge, and has been recognized by courts, that certain of the lines of business activity to which such names are given are more or less closely related to hawking.

"The business of one who sells or offers goods for sale on the streets, by outcry, or by attracting the attention of persons by exposing his goods in a public place, or by placards, labels, or signals." Black's Law Dictionary.

These peculiarities of such business, which often result in aggressive competition and annoying intrusion upon the public streets, have given rise to a line of decisions in other States sometimes called "fruit-stand cases." In those opinions the courts, when squarely confronted with the question, have almost universally held that such vending stands, when maintained in the streets of a city, are public nuisances *per se.*

As those decisions are from States where the right to acquire title against a city by adverse possession is not recognized and in some the authority of a city to license use of its streets for places of traffic is denied, they are not in their entirety of controlling significance here, but the views there expressed of the nature and general attributes of "fruit-stands" and like places of barter on public thoroughfares is worthy of consideration.

In the early case of *Commonwealth* v. *Wentworth,* 4 Clark (Pa.), 324, decided in 1823, it was held to be a public nuisance, indictable at common law, to place on the footway of a street in the city of Philadelphia a stall for the sale of fruit and confectionery, although the defendant paid rent to the owner of adjoining premises for so much of the street as was so occupied. The subject is reviewed in an exhaustive and able opinion by Justice Head, in *Costello* v. *State,* 108 Ala. 45 (18 South. 820, 35 L. R. A. 303), where it was held that a fruit-stand, though erected on the covering of the open way through a sidewalk to a cellar, was an indictable nuisance, the court saying, amongst other reasons given:

"And to this must be added, as a necessary legal inference, from the fact that these stands were used for carrying on the business of selling fruits, etc., the permanent occupation of the sidewalk by the person or persons  *  *  *  making the sales; and by the

standing thereon, from time to time, day by day, of customers trading at such stands."

See, also, *City of Chicago* v. *Pooley*, 112 Ill. App. 343; *Galloso* v. *City of Sikeston*, 124 Mo. App. 380 (101 S. W. 715); *State* v. *Berdetta*, 73 Ind. 185 (38 Am. Rep. 117); *Schopp* v. *City of St. Louis*, 117 Mo. 131 (22 S. W. 898, 20 L. R. A. 783); *People* v. *Keating*, 168 N. Y. 390 (61 N. E. 637).

That the fruit-stand is an encroachment upon, and obstruction of, a portion of a public street of the city appears from the bill of complaint. It is alleged that neither complainant "nor any of the prior owners of said stand have ever operated or conducted the same by reason of any permit issued by the department of public works of the city of Detroit, or any person," etc. It was maintained there in violation of a city ordinance.

The charter of the city of Detroit (section 175) gives the common council power to prohibit and remove all encroachments upon and obstruction in public streets, avenues, and spaces in said city by buildings, fences, or any other manner. We are not advised of any buildings or fences in this case. The exclusive possession claimed is stated to be a fruit-stand operated by its owners. A fruit-stand in operation on the sidewalk of a public street is both an incumbrance and obstruction.

By an ordinance of some length, passed in 1894 (chapter 60, Comp. Ord. 1912), obstructing and incumbering streets and other public places with buildings, boxes, etc., is prohibited with certain exceptions, authorizing, under permission obtained from the department of public works, temporary use of sidewalks in front of business places in elevating and receiving heavy merchandise, and other customary use and occupation of streets in connection with business con-

ducted on adjacent property, not to obstruct public travel—

"With a proviso, that nothing herein contained shall be construed to grant authority to any owner or occupant of any premises to let, sublet, rent, lease or grant, where such use and occupation will not obstruct public travel, free use of, to any person whatsoever, any of the sidewalk space (meaning the space between the lot line of the property and the curbstone or any space outside of the lot line, on, above or below ground) for business stands of any kind, or for any purpose whatsoever; and any person so found doing business may be summarily removed by the department of public works or the metropolitan police and be deemed a violator of this ordinance."

The ordinance further prohibits structures or framework covered or uncovered, attached to or in front of any building, extending into the street beyond any lot line, and authorizes summary removal of same after 24 hours' notice from the department of public works.

It was after a notice from the commissioner of public works of an intention to enforce this ordinance, served upon John Pastorino, that complainant bought back the fruit-stand and filed this bill basing his claim of right to remain undisturbed on the strength of his landlord's title by adverse possession. There is no intimation in the bill that the city officials or the public generally had any notice or knowledge that the relation of landlord and tenant existed between the changing owners and operators of this fruit-stand in the street and the owner of the adjacent property in direct violation of a city ordinance, and, if any presumptions arise, they would be to the contrary.

While the bill alleges the possession was notorious, there is no allegation that its vicarious character was notorious.

It is contended in behalf of complainant that in the demurrer and argument defendants assume without

warrant that the fruit-stand is a "temporary obstruction," a fact not admitted in the bill, but, in substance, alleged to the contrary, it being distinctly stated that said stand had remained continuously, and in effect, permanently, on the one spot described since 1890, and before; that, in any view, whether or not the obstruction in this case is temporary or permanent is a question of fact to be determined as an issue in the case.

The length of time the obstruction may have remained in the street does not determine its character. Whether it is to be regarded as temporary or permanent depends upon what it is. In the light of views expressed by courts having occasion to deal with the subject, as well as from common knowledge and definition, we have no hesitancy in concluding, as a matter of law, that "fruit-stands" located on the sidewalks of public streets are not, as such, permanent obstructions, in the sense the term is used by courts and applied to inclosures, substantial structures, steps, stairways, walls, and other physical attachments to the soil of a permanent nature, obtruding upon and obstructing a street.

The scheme of complainant's bill founds his claim for equitable relief on a title by prescription in the owner or owners of the adjacent lot, to a portion of the street in front of the property. The owner is not a party to the suit. Who, or what, or how many such there are, or what he, she, it or they personally claim is not disclosed. The case, however, must turn on the question of a title in the unknown owner or owners. In *Fuller* v. *City of Grand Rapids*, 105 Mich. 529 (63 N. W. 530), the general rule relative to obtrusions upon streets by adjacent owners is thus stated:

"Owners of adjacent lands acquire no permanent rights in the public streets by the erection of structures for their own use and benefit. So long as the

182 Mich.—2.

space so occupied is not required for public use, they are usually permitted, but, when the public demands it for the use for which it has been condemned or dedicated, the private use must go, and the structures be removed. The opportunity to remove them is all the right the law gives the owners."

Much less would they acquire permanent rights if, while quietly remaining undisclosed, they privately, though for a consideration, allowed others who were strangers to their ownership of the adjacent property to establish a fruit-stand in the street for their own use, but a joint benefit. It is unquestioned that adverse title may be acquired through possession held by a tenant, but it is elementary that, whether the claimant acts in person or through a tenant, he must show a disseisin and unequivocal assertion of title in himself as against the original holder of the title, and as bearing upon the adjacent owner's claim of right in support of his title being brought home to the city this is a consideration, for there is no allegation in the bill or claim that any notice was ever given to the city that the adjacent lot owner claimed or intended to claim title to a portion of the street held in hostility to the city, beyond the fact that the owners of the fruit-stand were openly in possession and doing business there.

Though the bill states said stand was not conducted by reason of any permit from the department of public works, it is manifest that the possession was in its inception, when ascribed to the adjacent owner, as it is here, by mere indulgence, sufferance, or implied permission, and of the character stated in *Fuller* v. *City of Grand Rapids, supra,* which might continue so long as the space occupied was not required for public use, and which could not ripen into a title however long continued until there was a disseisin by change in the nature of the possession and an ex-

pressed, hostile, adverse assertion of title.   14 Cyc. p. 1152.

In this case we are dealing with the right of an adjacent owner to set up a fruit-stand on the sidewalk beyond his lot line, and, by operating it there for the statutory period in the usual way, acquire title to that portion of the street he has cumbered with it.

A fruit-stand upon a public highway is not, in its basic characteristics, a permanent obstruction of the class by which title may be acquired by prescription. The name itself imports locality and a huckstering business combined.   The place would not be a fruit-stand unless the business of selling fruit was carried on there.

When established on a sidewalk in a public street, it has been held a nuisance *per se*, and to maintain it a public offense.   It is within the police power of the city of Detroit under its charter to summarily remove, in a reasonable manner, after proper previous notice, "any person so found doing business," and any obstructions found on the public streets in connection with said business.

The following language by Justice GRANT in *Weber* v. *City of Detroit*, 159 Mich. 14 (123 N. W. 540, 36 L. R. A. [N. S.] 1056), relative to the adjoining owner acquiring title to public property by prescription is appropriate and well in point here:

"There was nothing in appearance to indicate a permanent, hostile, or adverse possession.   It is common knowledge that merchants are permitted, without objection by the public, to occupy parts of streets and sidewalks in front of their stores to exhibit goods for sale.   It has never been held that by so doing they could acquire title by adverse possession.   They occupy these portions of the public thoroughfares by permission, and not in hostility to the public.   *   *   *

"Under complainant's contention, every occupancy by an adjoining owner of the unused portion of a public highway or street along its sides for the storage or

display of merchandise would result in depriving the municipalities of a portion of their streets if such occupancy were continued for the statutory period. Such holding is not in accord with authority or sound reason."

The decree of the court below dismissing said bill of complaint is affirmed, with costs.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and MOORE, JJ., concurred.