(41 App. Div. 148.)

BURLEW v. HUNTER.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. HIGHWAYS—WHEN PUBLIC.
　　Actual user of a road by the public does not make it a public highway, where it is not shown that it was laid out as a public road, or that it was ever worked or accepted by the proper authorities.

2. EJECTMENT—PLEADING—ISSUES.
　　A complaint in ejectment averring title in plaintiff, and charging defendant with wrongfully withholding possession, where met by a general denial and a specific allegation of title in defendant, raises only the issue

of the title, and not the defenses of right of way by prescription or by necessity, or that an actual highway exists.

3. SAME—AFFIRMATIVE DEFENSES.

In ejectment, the defenses of right of way by prescription or by necessity, or that an actual highway exists, are affirmative, and must be pleaded.

4. SAME—VERDICT.

Defendant's claim of title to lands, in ejectment, where supported only by evidence of an easement, does not warrant a general verdict for him.

Appeal from trial term, Cayuga county.

Ejectment by Phebe Burlew against John L. Hunter. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

The action was commenced March 29, 1895, and the trial had May 2, 1898. The complaint in this action is in ejectment, to recover a small tract of land, situate in said county, lying between the right of way of the Lehigh Valley Railroad Company and Owasco Lake. The piece of land is irregular in form, and upon it defendant has a cottage, boat house, barn, and outbuildings, which he occupies during the summer. His only practicable way of egress from his buildings by land is southerly along the westerly shore of the lake, and over a farm crossing which the plaintiff claims belongs to her. The farm of plaintiff, before the construction of the railroad, extended to the lake shore, including the lands in controversy. As actually occupied since the building of the railroad, it has not embraced the tract now claimed by defendant. The description of the lands claimed by the plaintiff in her complaint comprises all that occupied by the defendant, but this contention was not asserted upon the trial. The answer of the defendant not only contains a general denial, but affirmatively asserts title to the land occupied by him, under the following description: "Beginning in the east line of the lands of the Southern Central Railroad Company on said lot, where the center line of a division fence marks the boundary between the lands of Peter V. Wyckoff, now deceased, and Thomas Plunkett, in April, 1875, which point is in or near the center of a brook flowing easterly into Owasco Lake; running from thence along the east line of the lands of said railroad company to the waters of Owasco Lake, at high-water mark; thence northerly along the waters of said Owasco Lake, at high-water mark, to the northeast corner of said lands, formerly owned by said Peter V. Wyckoff; thence westerly along the said line between the lands of Peter V. Wyckoff and Thomas Plunkett to the place of beginning,— which said lands include all the lands and premises which are south of the lands of Thomas Plunkett and east of the right of way of the Lehigh Valley Railroad Company and west of Owasco Lake, and extending as far south as the farm crossing over the tracks of the said Lehigh Valley Railroad right of way." It is further alleged in the answer that defendant derived title thereto by a deed from Alida M. Cooper and Orrin H. Burdick, bearing date June 8, 1891. Burdick acquired title by purchase from Peter V. Wyckoff. The deed was executed and delivered April 1, 1875, and he immediately went into possession under this conveyance. Alida Cooper's title came from Burdick. The possession by Burdick, Cooper, and defendant was continuous. The plaintiff acquired title through Wyckoff by a mortgage foreclosure sale March 1, 1887. The facts pertaining to the record title were uncontroverted.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

F. E. Cady, for appellant.
Frank S. Coburn, for respondent.

SPRING, J. The real controversy between the parties, within the scope of their pleadings, narrows down to the location of the southerly boundary of defendant's purchase. In his conveyance, the south-

erly point is at high-water mark, and northerly along the same designated course. The lake at this place has an uneven boundary, indenting into the land so that south of the buildings it forms a cove or bayou; and it is contended by the plaintiff that the water extends at high-water mark to the railroad embankment, and this is, therefore, the southerly limit of defendant's possession. The defendant's witnesses do not definitely locate the high-water mark as fixing his southerly line, but there is considerable testimony tending to show that this mark is not up to the embankment, but ample room is left between the railroad lands and high water for the driveway used by the defendant and Burdick in their occupancy of these premises. South of this cove the land ascends to the farm crossing, and the high-water mark, as maintained by defendant, is even south of this crossing, which is also a part of plaintiff's lands, although upon the trial, and by his answer, the defendant pressed his claim only to this crossing. Conflicting testimony relating to the location of high-water mark was sufficient to make a fair question of fact; and, if the verdict depended upon that alone, it could stand the test. The defendant, however, claimed other defenses, and proof was given in their support, and they were submitted to the jury to pass upon.

It is contended by the defendant that he and his predecessor, Burdick, used a driveway along this land and over this crossing from the commencement of their possession; that they constructed this private road, expended money in its making, repair, and beautification from time to time; and that Wyckoff assented to this user. It is contended that defendant therefore has a right of way by prescription over these premises, to and including the farm crossing. Again, it is maintained, defendant purchased the land of Wyckoff with no other exit than this crossing; that the railroad embankment was 10 or 12 feet in height, and passage over it was impracticable; and that defendant and his grantors had a right of way by necessity to reach the highway. The rule is a familiar one that a purchaser of land accessible only over the lands of his grantor has a right to cross the premises of such grantor to reach the land hemmed in. Holmes v. Seely, 19 Wend. 507. And, if the grantor omits to select the right of way, then the grantee may make the designation, and after its selection it remains as the fixed right as long as the necessity exists. Onthank v. Railroad Co., 71 N. Y. 194; Palmer v. Palmer, 150 N. Y. 139, 44 N. E. 966. A right of way by necessity is permissible only where the access is essential to the enjoyment of the land purchased. It cannot be founded upon convenience. 2 Washb. Real Prop. (3d Ed.) p. 306. Owasco Lake is a navigable body of water, permitting an unimpeded way out over it; so we are not clear that an easement by necessity exists in favor of defendant. Jones, Easem. § 320; Kingsley v. Improvement Co., 86 Me. 279, 29 Atl. 1074.

It is urged this driveway is a public highway. This suggestion is founded upon actual user by neighbors and others, but there is no proof it was ever laid out as a public road, or that it was ever worked or accepted by the proper authorities. The case shows none of the indicia essential to constitute a public highway. There is no

inkling of either of these defenses in the answer, and the objection to the reception of evidence bearing upon these issues was raised in a timely and definite manner. The complaint avers title in plaintiff, charging defendant with wrongfully withholding possession, alleging acts in·support of this contention. The defendant pleads a general denial, and then specifically affirms legal title in himself. So the issue of title is the real one presented. The defense of right of way by prescription or by necessity, or that an actual highway exists, is, like adverse possession, an affirmative defense, and must be set forth in the answer. Ford v. Sampson, 8 Abb. Prac. 332; Hansee v. Mead, 27 Hun, 162. These defenses do not show title in defendant. They are on the assumption the plaintiff possessed the legal title, but has lost it, not by parting with it by conveyance, but lapse of time, or the intervention of an equity in another created by the grantor, has rendered impossible the maintenance of possession by plaintiff, as against the defendant. The learned trial judge, with apt illustration, submitted these questions to the jury, as the vital ones in the case, for their determination. He further stated that, if any one of these facts was found by them in favor of defendant, its verdict should be for him. If the defense of prescriptive right or that of right of way by necessity or that of public highway existed, it did not justify a verdict in behalf of defendant. He claimed title to those lands, and a general verdict in his behalf vindicated this claim. If plaintiff was entitled to the fee of the lands, then the verdict should have so stated, and subject to the easement or servitude of defendant, if he possessed it. This easement, if it existed, did not·embrace all the disputed territory, and the land contiguous to it still remained in the plaintiff, unless defeated by the superior legal title of the defendant. The jury found the title in the defendant, according him the possession, but these findings may have been based upon the general statement of the trial judge that an easement entitled the defendant to a verdict. No distinction was made between the right of defendant to pass over the lands, which is a mere easement, and the absolute legal title. Presented, as this was, in a distinct, emphatic manner by the trial judge, the jury may easily have been misled.

We regret the necessity that compels a new trial of this action. The land in dispute is of little value, and the costs have already become very onerous; but, as we view it, the trial judge submitted facts to the jury not warranted by the pleadings or the law applicable to the case.

The judgment and order are reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.