BAUMAN v. WAGNER et al.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. EASEMENTS (§ 18*)—IMPLICATION—WAY OF NECESSITY.

     A right of way over another's premises will not be implied unless it is strictly essential in order to obtain access to the land for the benefit of which it is presumed to have been granted; the theory of an implied easement being based upon the probable intention of the parties.

     [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 50–55; Dec. Dig. § 18.*]

2. EASEMENTS (§ 36*)—WAY OF NECESSITY—EVIDENCE.

     In a suit to enjoin defendant from building a road over plaintiff's land, the right to which is claimed under a way by necessity in defendant's

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

grantor, evidence *held* not to show that the parties contemplated a fifteen-foot roadway through plaintiff's land.

[Ed. Note.—For other cases, see Easements, Dec. Dig. § 36.*]

3. EASEMENTS (§ 26*)—WAY OF NECESSITY.

A right of way by necessity over lands of another ceases when the necessity ceases.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 81; Dec. Dig. § 26.*]

4. EASEMENTS (§ 18*)—IMPLICATION—WAY OF NECESSITY.

The existence of a reasonable access to a highway over a navigable body of water prevents the maintenance of a way by necessity over another's land.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 54; Dec. Dig. § 18.*]

5. EASEMENTS (§ 30*)—WAY OF NECESSITY—ABANDONMENT.

Defendant's grantor purchased an island from plaintiff and erected a dock thereon, and for 30 years did not claim any right of way over plaintiff's adjoining land to a public highway, plaintiff having during that time cultivated his land, sold a strip of it for a railroad right of way, and leased some of it to another, all of which defendant's grantor knew. *Held*, that any claim of a right of way by necessity over plaintiff's land was abandoned by defendant and his predecessor.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77–79; Dec. Dig. § 30.*]

6. EASEMENTS (§ 30*)—WAY OF NECESSITY—EXTINGUISHMENT—REPUDIATION.

Any way by necessity over plaintiff's land by defendant or his predecessor was extinguished by its open repudiation by plaintiff for a period of 30 years.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 79; Dec. Dig. § 30.*]

Robson, J., dissenting.

Appeal from Special Term, Monroe County.

Action by William S. Bauman against Dora Wagner and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Everett O. Gibbs, for appellant.
D. W. Forsyth, for respondents.

SPRING, J. William J. Bauman and wife by deed dated December 16, 1872, conveyed to their son, William S., 30 acres of land on lot 6 in the town of Irondequoit, in the county of Monroe, extending east to Irondequoit Bay. The deed was delivered at once, but was not recorded until May 22d following. It included an acre of land immediately south of the 30 acres, and upon which acre the grantee had erected a dwelling house the year preceding. East of the tract of land conveyed and in Irondequoit Bay was an island, then known as Cobb's Island, wholly covered with forest trees and containing about two acres. Between the island and a strip of land designated as the peninsula, and which was a rocky, uneven promontory, was a marsh, and there was also a marsh between the penin-

sula and the dry land to the west. Irondequoit Bay is a navigable arm or bayou of Lake Ontario extending southerly from the lake about four miles, and of the width of about three-quarters of a mile. By deed dated and delivered on May 6, 1873, the said William Bauman and wife conveyed said Cobb's Island to Frank Schneider, and the same thereafter was known as Schneider's Island, and will be so styled. In the conveyance explaining the description and after designating the island by name, the following appears:

"Which island is surrounded in the north, east and south by the waters of said Irondequoit Bay and bounded on the west by a swamp which separates said island from the other part of said lot No. Six (6) owned by said parties of the first part. And said party of second part is to have the use of said swamp which separates the island and swamp hereby conveyed from the swamp and land owned by parties of the first part forever for ingress and egress to and from said island. Said island containing 2 acres more or less, and it being understood that one-half of the swamp between said Cobb Island and the land owned by said Bowman is intended to be conveyed hereby."

The 30-acre tract back for some distance from the bay was covered with timber, was hilly, and broken and cut by ravines. Bay Village road on the west and extending northerly through it, and sometimes called Bauman's road, was the only highway touching the 30 acres or any of the lands in lot 6. George Schneider, a son of the grantee, a witness on behalf of the defendant, testified that the Baumans had sort of a wood road jutting off from the highway in a southeasterly direction, winding down steep pitches to a creek over which was a little bridge, and he thus continued his description:

"Then the driveway stopped there and there was a pathway from there over to the peninsula and a pathway along the east side of the peninsula to a point opposite the island, and I went from that point on the peninsula over to the island upon a bridge that my father built. That bridge was there only a few years after the island was bought."

When Schneider purchased the island there was no highway in that vicinity extending to the bay. There was no wharf or landing place on the shores of the island, and it was not cultivated or occupied. Shortly after Schneider acquired the island he cut down the timber, erected a cottage and afterwards a hotel thereon, built a dock, and in 1878 began to run a small steamer on the bay carrying passengers for hire. He kept up this business for 21 years, stopping at several docks along the west shore of the bay, and which were publicly and generally used for the reception and discharge of passengers. There was no interference with the use of these docks, and they are still accessible and available to any one going to and from the island, as the trial court has found. In 1876 the Bay Village road was extended as a highway to the lake, its easterly terminus within 60 rods from the island. The public road known as the Float Bridge road was also extended to the bay, and the trial court has found that these highways are each "within a reasonable distance of said island," and can be reached by boat therefrom and "without crossing private property," and the proof well supports these findings. After Schneider erected the hotel and wharf he did not use the pathway or the wood road across the 30-acre tract to the highway. Until 1907 there was no claim of a right of way either pursuant to the terms of the

deed or by reason of any necessity to gain access to the Bay Village road by Schneider or the defendant Wagner, his successor in the ownership of the land.

In 1889 the Glen Haven Railroad was constructed from the city of Rochester to the bay and over the 30-acre tract. The land was cleared up, some of the steep places in this vicinity cut down, marshy spots filled with earth, hotels erected, and the locality became a summer resort with the accessories customary in such development. There was a footbridge extending from the island to the mainland over the railroad property and the lands of the Glen Haven Improvement Company, and this was used without hindrance for 18 years by the sufferance of these companies. The use of this way was finally prohibited by the companies, and litigation ensued between the improvement company and the defendant Wagner involving the right of the latter to use this route to the mainland, and the decision was adverse to her claim. The railroad company and the improvement company had acquired either absolutely or by lease the upper easterly end of the Bauman land, and the footbridge and way of travel was along this land, and it was not the route of the old wood road and connecting pathway referred to. The defendant also applied to the town authorities for a road out, but they refused to lay out a highway for her. She then in 1907 claimed of the plaintiff a right of way by virtue of the deed to Schneider, and asked him to designate the location of the way, which he did not do, in effect repudiating her right to cross his premises. She thereupon commenced to construct a roadway about 15 feet in width over the lands and uniting with the Bay Village road, and was engaged in excavating the earth and cutting down the timber for such purpose when the plaintiff commenced this action to enjoin her from building this road. The question involved was her right to the roadway across these premises by virtue of the deed of the island to Schneider.

There is no clause in the deed which expressly grants a right of way over these premises beyond the swamp. Bauman, Sr., owned that part of lot 6 immediately adjacent on the south to the tract he had conveyed to his son, and this land was owned by him at the time of the conveyance to Schneider, and was west of the island. The court, therefore, found at the request of the plaintiff:

"That the swamp referred to in the deed to said Schneider was the swamp east of the peninsula lying between said peninsula and Schneider's Island, and that that portion of said peninsula south of the thirty (30) acres is the other part of lot 6 referred to in that portion of said deed which reads: 'Bounded on the west by a swamp which separates said island from the other part of said lot 6 owned by the parties of the first part.'"

And this finding would seem to be within the fair intent of the parties.

We will assume, however, that one-half of the swamp, the entire length of the island, passed absolutely to Schneider by the grant with the right of "ingress and egress to and from the island" over the swamp not conveyed.

[1] A right of way to one man over the premises of another will not be implied unless at the time the burden was supposed to be at-

tached it was strictly essential in order to obtain access to the land for whose benefit it was created. Wells v. Garbutt, 132 N. Y. 430, 435, 30 N. E. 978; 2 Washburn on Real Property (3d Ed.) p. 306.

As was said in Ogden v. Jennings et al., 62 N. Y. 526, 531:

"It must be an actual and a direct necessity. A mere convenience is not sufficient to create or convey a right or easement, or impose burthens on lands other than those granted, as incident to the grant. In all cases the question of necessity controls."

The theory of an implied easement is founded upon the probable intention of the parties to the grant. If an owner of land sells a portion of his holdings to be occupied and enjoyed by the grantee, and there is no way of reaching a highway except over the lands of the grantor, it is reasonable to assume that it was the intent that the grantee possess an easement over the lands retained by the grantor if the same will enable him to reach a public road. The right of way would be essential to the enjoyment of the land purchased. Rights of way and easements are expected to pass by grant, and only the manifest necessity entering into the consideration for the conveyance in order to make possible the enjoyment of that purchased will warrant the imposition of the burden in the absence of a covenant in the deed or some other effective written instrument or clause.

The surroundings and situation in 1873 when the deed was executed are illuminating as bearing upon the probable intent of the parties to the conveyance. The land was rough and broken, and evidently Schneider had in mind using the island for a summer resort, to be patronized by people transported to it in steamers or boats. As soon as this project began to germinate, what little intermittent user he had made of this pathway and wood road was entirely abandoned, and was never again resumed.

Assuming, without deciding, that a right of way existed when the deed was delivered, it was limited to a footpath and the wood road as then constructed.

[2] No right to a roadway 15 feet in width cutting through this tract was ever in the contemplation of the parties. If a right to cross the land at all ever existed, it soon disappeared.

[3] When the highways were extended to the bay, the necessity was gone and the right went with the passing of the necessity. Ogden v. Jennings, supra, at page 531, 62 N. Y.; Palmer v. Palmer, 150 N. Y. 139, 147, 44 N. E. 966, 55 Am. St. Rep. 653. It seems to me there is another insuperable objection to the defendants' claim. As stated, Irondequoit bay is a navigable body of water. When the highways were extended to the bay and were readily accessible by boats and steamers from the island, the necessity for a way out over the lands of the plaintiff ceased.

[4] The reasonable access to a highway over a navigable body of water prevents the maintenance of a passage by necessity over the lands of another. Kingsley v. Gouldsborough Land Imp. Co., 86 Me. 279, 29 Atl. 1074, 25 L. R. A. 502; Hildreth v. Googins, 91 Me. 227, 39 Atl. 550; Turnbull v. Rivers, 3 McCord (S. C.) 131, 15 Am. Dec. 662; Burlew v. Hunter, 41 App. Div. 148, 151, 58 N. Y. Supp. 453;

Jones, Easements, § 322. In the first case cited the court used this language at page 503, 25 L. R. A. (86 Me. at page 281, 29 Atl. at page 1075):

"In the present case the defendant's land has navigable waters on three sides of it. Over these waters there is a public right of travel. The defendant has the free use of these waters in going to and from his land. It has erected wharves, and owns a steamboat, which during certain portions of the year runs several times each day between there and Bar Harbor, and, as occasion requires, to Winter Harbor, on the east. To the latter place it is only three-quarters of a mile by the way of the road or by water. It might oftentimes be more convenient to pass over a highway, or across the plaintiff's premises, than be subjected to the inconvenience of using the waters of the sea. But this inconvenience is not such as the law requires to constitute a legal necessity for the way claimed."

The evidence shows two important facts without any controversy. After Schneider erected his dock and for 30 years there was no claim or pretense that he had a right of way over the premises of the plaintiff. On the other hand, the plaintiff cultivated the tillable land, sold a strip entirely across it from north to south to the railway company, which constructed and operates a railroad along its purchase, and leased some of the land to an improvement company, which is in possession. These acts of uninterrupted ownership and occupancy, and selling and leasing, were hostile to any easement of Schneider or of the present owner of the island. They understood well when all this work was going on, and that it was repugnant to any right of way over the premises.

[5,6] On the one hand, it might well be held that there was an abandonment of any claim; and, on the other, an open repudiation of it by the owner of the servient estate for a sufficient length of time to extinguish any easement which had ever existed. Woodruff et al. v. Paddock, 130 N. Y. 618, 29 N. E. 1021; Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; Corning v. Gould, 16 Wend. (N. Y.) 531.

I think the judgment should be reversed.

Judgment reversed, and new trial granted, upon the law and facts, with costs to the appellant to abide event. All concur, except ROBSON, J., who dissents.