JOHN D. PICOTTE, Plaintiff, *v.* BERNARD G. SMITH, Defendant.

(Supreme Court, Schenectady Trial Term, January, 1920.)

Contracts — deeds — action to recover damages for breach of contract — title — reservations — incumbrances — pleading — tender — evidence.

In an action to recover damages for breach of a contract for the exchange of real estate, all objections to title which might have been obviated on the closing day, if raised, may not be considered.

To ascertain whether, in any case, a reservation or an exception is intended, it is necessary to take the language of the

deed creating the same, and if the meaning is doubtful, to consider the surrounding circumstances, having in mind that the deed must be construed most favorably to the grantee, that it must be held to have conveyed all the interest of the grantor, unless the intent to pass a less estate or interest appears by express terms or is necessarily to be implied, and that an exception to the fee is not implied, but that the intent to make it must expressly appear.

In an action to recover damages for breach of a contract to exchange real estate it appeared that plaintiff had entered into a contract to convey to defendant by a warranty deed a certain farm free and clear of all incumbrances except a mortgage which was mentioned; plaintiff tendered a deed which described the farm as containing a certain number of acres more or less and containing the clause, " reserving out of the aforesaid described premises the cemetery lot thereon enclosed with an iron fence." The cemetery, which is not on a highway and no path or road leads to it, was first referred to in a deed from V., by which was conveyed about one hundred acres more or less with a reservation in the words, " reserving the cemetery enclosed with an iron fence," and in all deeds subsequently made, including that to plaintiff, the word " reserving " was used alone and not joined with the word " excepting." *Held,* that defendant had the right to insist upon a deed of the whole farm free and clear of all incumbrances except the mortgage, and that the complaint should be dismissed with costs to defendant.

Each party claimed that the other was solely responsible for the breach of the contract sued on, and demanded judgment for the sum agreed upon as liquidated damages, the plaintiff in his complaint and the defendant in his counterclaim, but the evidence showed that defendant was not ready and willing to perform. *Held,* that the counterclaim should be dismissed.

ACTION to recover damages for a breach of contract for the exchange of real estate.

Harold A. Gordon, for plaintiff.

Walter F. Wellman, for defendant.

10

WHITMYER, J.  The action has been brought to recover damages for the breach of a contract for the exchange of real estate.  Each party claims that the other is solely responsible for the breach and is demanding judgment for the sum of $500, agreed upon as the liquidated damages, the plaintiff in his complaint and the defendant in his first counter-claim.  Defendant has set up a second counter-claim for expenses incurred, but has chosen to stand on the first.  The contract was made on May 4, 1916.  Plaintiff agreed therein to sell and convey to defendant on June 1, 1916, in fee simple by a good and sufficient conveyance, with covenants of warranty, free and clear from all liens, rights of dower, or other incumbrances, unless therein specified, all that certain farm situate in Fulton county, known as the Peter Vosburgh farm, about two miles from Johnstown, N. Y., containing about 106 acres of land, being the same farm conveyed to him by Frank Hine, in July, 1915, with all the appurtenances and subject to the lien of a mortgage in the principal sum of $5,600, together with certain personal property, and to pay the sum of $650, in cash, in exchange for certain real estate, belonging to defendant, in the city of Schenectady, N. Y., which was subject to a mortgage for $3,200, and which defendant agreed to sell and convey to plaintiff, subject to said mortgage, at the same time and by the same kind of a deed, all interest and insurance to be adjusted as of the date of the transfer, each party to furnish the other with an abstract of his title, and, in case of failure to perform, to pay the other the sum of $500 as the liquidated damages.  The parties were to have possession at once.  The records in the office of the clerk of Fulton county show that one Alice B. Vosburgh at that time owned a mortgage on plaintiff's farm, in the sum of $6,000, but the sum of $5,800 was actually due thereon.  On June 1, 1916, at two P. M.,

the parties met by agreement and plaintiff tendered to defendant the sum of $650 in legal tender, a bill of sale of his personal property to be transferred, an abstract of the title to his farm, a receipt from Mrs. Vosburgh, dated May 31, 1916, for the sum of $200 on the principal of the mortgage and $4 interest on the sum paid from January 27, 1916, reciting that the installment then due was the sum of $300, and that plaintiff agreed to pay the balance on July 27, 1916, and reciting, further, that the amount due on the mortgage was the sum of $5,600 of principal and interest thereon from January 27, 1916. And, he also tendered a deed of the farm, which described it as containing 100 acres, subject to a mortgage, upon which there was unpaid $5,600 of principal, with interest from January 27, 1916, and with a reservation in the words, " reserving out of the aforesaid described premises the cemetery lot thereon, enclosed with an iron fence." A cemetery is located within the boundaries of the farm. It has been there for many years. It is eighteen feet by twenty-two feet and is enclosed by an iron fence, without a gate. It is near the northwesterly corner of the farm, about three hundred feet from the house, on an elevation between the northerly side of the house and the northerly line of the farm. It is not on a highway and no path or road leads to it. The last interment was in 1857. Who were buried there does not appear, but it does appear that the farm had been in the Vosburgh family for many years. The cemetery is first referred to in the deed from Alice B. Vosburgh and her mother-in-law to Patrick J. Connolly, given and recorded January 27, 1914. The former of the grantors is the widow and the latter the mother of the Peter Vosburgh referred to in the contract. That deed conveyed " about one hundred acres more or less," with a reservation in the words, " reserving the ceme-

tery enclosed with iron fence.'' Connolly and his wife conveyed to Frank J. Hine on January 27, 1915, in practically the same language, except that they reserved " the cemetery lot on said premises, enclosed with iron fence.'' And Hine conveyed " about one hundred acres more or less " to plaintiff, on June 14, 1915, with the reservation in the words, " reserving out of the aforesaid described premises the cemetery lot thereon, enclosed with an iron fence.'' Defendant first saw the farm on May 3, 1916. Plaintiff pointed out the lines to him on that day and claims that he also showed him the cemetery from a point about one hundred feet northerly from the northerly side of the house. He does not claim that he said anything about the reservation. Defendant and one Feld, who accompanied, say that he showed only the lines of the farm. On May 5, 1916, defendant went to the farm and gave directions about the purchase of seed. About a week later he went again and gave directions about seeding and planting on the different sides of the cemetery. That was the time, he claims, when he first learned about the cemetery. Right after that, he showed plaintiff a telegram, which he said was from his wife, telling him not to trade for a farm. And on May 18, 1916, he told plaintiff that he would not trade, because of the cemetery. That was the situation at the time of plaintiff's tender. Defendant refused it. Plaintiff testified that he gave the reservation of the cemetery as the excuse. Defendant did not make any tender on his part. He testified that he was the owner of the property, which he was to convey, and that he was ready and willing to convey, but he had not prepared a deed of it and he conveyed it on that same day and one hour later to another, with whom he had made a contract so to do. In his answer, defendant refers only to the cemetery and to a right of way by necessity to it from the

highway and alleges that the same constituted incumbrances which were not specified in the contract. On the trial, he moved, at the end of plaintiff's case, for a nonsuit on the grounds that plaintiff did not make out a case, that the tender was not in accordance with the contract, that the evidence failed to show that the property was free and clear from incumbrances, other than the one specified in the contract, that the property was subject to a right of way by necessity, and that there was no proof of a waiver on his part. The motion was renewed on the same grounds at the close of the evidence. Plaintiff at that time moved for a dismissal of the counter-claim on the ground that defendant did not show a tender of performance on his part and a readiness and willingness to perform. All of the motions were denied. And each party moved that a verdict be directed in his favor. In his brief, defendant claims additional defects in the title, namely, lack of proof that Peter M. Vosburgh died intestate and that he left him surviving Alice M. Vosburgh, his widow, and Herbert M. Vosburgh, his son, as his only heirs at law, lack of proof that Peter M. Vosburgh was dead at the time that his son conveyed to his widow, lack of proof that his son was not married at that time, lack of proof that Frank J. Hine was not married when he conveyed to plaintiff, that the contract calls for 106 acres, while the deed specifies 100 acres, that the receipt or paper given by Mrs. Vosburgh to plaintiff was not acknowledged and did not change the effect of the record, and that all interest and insurance were to be adjusted as of the date of the transfer, while the deed is subject to the mortgage, with interest from January 27, 1916. All of these objections might have been obviated on the day, if they had been raised (*Higgins* v. *Eagleton,* 155 N. Y. 466, 473), except the one as to the acreage and that could have

been adjusted by an abatement from the price. *Mills v. Kampfe,* 202 N. Y. 46. So that only the questions relating to the cemetery and to the right of way by necessity will be considered. Plaintiff claims that the cemetery was not included in the farm. That depends upon whether it was excepted or reserved in the deeds. There is a difference in the meaning of the words. "A reservation is always of something taken back out of that which is clearly granted; while an exception is of some part of the estate not granted at all. A reservation is never of any part of the estate itself, but of something issuing out of it, as for instance, rent, or some right to be exercised in relation to the estate; as to cut timber upon it. An exception, on the other hand, must be a portion of the thing granted, or described as granted, and can be of nothing else; and must also be of something which can be enjoyed separately from the thing granted." *Craig* v. *Wells,* 11 N. Y. 315. To ascertain whether a reservation or an exception is intended in any case, it is necessary to take the language of the deed creating same, and, if the meaning is doubtful, to consider the surrounding circumstances, having in mind that the deed must be construed most favorably to the grantee, that it must be held to have conveyed all the interest of the grantor, unless the intent to pass a less estate or interest appears by express terms or is necessarily to be implied, and that an exception to the fee is not implied, but that the intent to make it must expressly appear. Real Prop. Law, § 245; *Myers* v. *Bell Telephone Co.,* 83 App. Div. 623, 625; *Blackman* v. *Striker,* 142 N. Y. 555, 561; *Osborne* v. *Auburn Telephone Co.,* 189 id. 393; *City Club of Auburn* v. *McGeer,* 198 id. 160; Id. 609, 610. The first mention of the cemetery is in the deed from Mrs. Vosburgh and her mother-in-law to Connolly, given on January 27, 1914. " Reserving " is

the word which was used in it and there is nothing to show that it was used in any other than its ordinary meaning, since it was used alone and was not joined with the word " excepting," in which case interpretation would have been necessary. And that was the word which was used in the subsequent deeds. Hine's deed to plaintiff, " reserving the cemetery out of the above described premises," is not inconsistent. He could not have intended to except it, because Mrs. Vosburgh and her mother-in-law had either the fee or the right to the use and there was no reason for excepting it. And the surrounding circumstances do not conflict with this view. The farm had been in the Vosburgh family and the cemetery had been the family burying plot for many years. Under the deed from Mrs. Vosburgh and her mother-in-law, the farm was going out of the family and it was natural for them to arrange matters so that other burials might be made in the cemetery in the future, if desired, and at any rate to make it possible to go to it. That was their desire and the result could be accomplished by reserving it as well as by excepting it. The facts that there had been no burial in it since 1857 and that it was inclosed by an iron fence, without a gate, do not show otherwise, because it would have been unnecessary to mention it, if that had been so. And while it may seem that it would have been more natural for them to have retained the fee, that could not have been their intention, because the cemetery was not on the highway and could not be enjoyed separately. *Craig* v. *Wells, supra.* However, in either case, the law presumes that a right of way was reserved between it and the highway. *French* v. *Carhart,* 1 N. Y. 96; *Burlew* v. *Hunter,* 41 App. Div. 148; *Palmer* v. *Palmer,* 150 N. Y. 139, 146. Now, plaintiff showed the lines of the farm to defendant and claims that he also pointed out

Supreme Court, January, 1920. [Vol. 110.

the cemetery on the day before the contract was drawn. Defendant denies that he pointed out the cemetery. Whatever the fact is as to that, it does not appear that plaintiff told him that it belonged to the Vosburghs or that they had any rights there. The contract was drawn on the next day. Plaintiff did not have his deed. The contract was for all of the Peter Vosburgh farm, free and clear from all liens or other incumbrances, except the mortgage, which was mentioned. Defendant had the right to insist upon it. The cemetery and the right of way were not mentioned. The deed tendered mentioned the cemetery. The right of way was entirely overlooked. And these are defects which cannot be ignored. *Fossume* v. *Requa*, 218 N. Y. 339. On the other hand, defendant did not tender his deed. Even if that was unnecessary, the evidence shows that he was not ready and willing to perform. So that, both the complaint and the counterclaim must be dismissed, with costs to defendant.

Judgment accordingly, with costs.