## RODAL v. CRAWFORD.

1. Easements—Way by User—Implied Dedication to Public.

   User of drive or passageway over defendant's land from boat
   dock to street openly, continuously, notoriously, adversely and
   hostile to latter's rights for over 30 years by public con-
   stituted implied dedication of the land embraced therein to
   the extent to which use has been made by the public.

2. Same—Acquisition by Prescription.

   The right to the use of a right of way may be acquired by
   prescription the same as title to the fee of lands.

3. Same—Finding of Court—Other Means of Access.

   In suit to establish right of way from boat dock to street across
   defendant's land, finding by court that plaintiff had no other
   means of access *held,* not error, notwithstanding use of way
   by permission had been obtained over third person's land
   after erection of obstruction by defendant.

4. APPEAL AND ERROR—DEFENSES NOT RAISED UPON TRIAL NOR AP-
PEARING IN REASONS FOR APPEAL.

    In suit to establish right of way from boat dock to street, de-
fense that plaintiffs have outlet by use of water of bay in
front of their property, not having been raised upon trial nor
appearing in reasons for appeal should not be considered.

5. EASEMENTS—LAND ON BAY SHORE—WAY OF NECESSITY.

    Outlet by water of bay which is frozen over and not navigable
by small boats for several months of the year *held,* no defense
in suit by owners of shore land and boat dock to establish
right of way therefrom to street across defendant's land as
public highway by necessity or user.

    POTTER, C. J., dissenting.

Appeal from Benzie; Lamb (Fred S.), J. Submit-
ted April 4, 1935. (Docket No. 60, Calendar No.
37,949.) Decided June 3, 1935.

Bill by Louis Rodal and Otto Rodal against Wash
Crawford to establish a street or way over land of
defendant, for an injunction and other relief. De-
cree for plaintiffs. Defendant appeals. Affirmed.

*Nevius & Kilian* (*M. G. Paul,* of counsel), for
plaintiffs.

*Campbell & Campbell,* for defendant.

NELSON SHARPE, J. I cannot concur in the opinion
of Mr. Chief Justice POTTER. The opinion of the
trial judge so clearly states the facts and the conclu-
sions of law which should be drawn therefrom that
I adopt it as my own.

"The bill was filed in the above entitled cause to
have the drive or passageway, leading from Main
street, in the village of Frankfort, in said county
(Benzie), to certain lands and premises, owned,
used and occupied by the plaintiffs, declared to be
a highway by user or a way of necessity to the extent

to which it has been used; to confirm the rights of the plaintiffs to the use of said highway or passageway over and across the lands particularly described in the said bill of complaint; to have the building, erected by the defendant across the said highway, or passageway, decreed to be a public nuisance and abated as such; and to secure a mandatory injunction to compel the said defendant to remove said building and obstruction from said highway or passageway to the end that the plaintiffs and the public at large may have and enjoy the use and benefit of such highway or passageway as it has been used and enjoyed for upwards of 50 years.

"From the proofs submitted it appears and the court accordingly finds the facts to be substantially as follows:

"The plaintiffs, Louis Rodal and Otto Rodal, are residents of said village of Frankfort, Benzie county, Michigan, engaged in the business of commercial fishing, and own, use and occupy that part of lot 3 and the west half of lot 2, block 3, lying south of the Ann Arbor Railway Company's right of way, in connection with their said business.

"The defendant, Wash Crawford, is likewise a resident of said village of Frankfort, runs a taxi business and is also engaged in a small manufacturing business, using the building complained of as the subject matter of this law-suit.

"According to the recorded plat of the village of Frankfort, block 3 is divided into four lots, numbered 1, 2, 3 and 4. This block extends from Main street on the north to Betsie bay on the south. The westerly boundary of the block is Third street and the easterly boundary thereof is Fourth street. The Ann Arbor Railway Company's right of way traverses this block in an easterly and westerly direction a little north of the center line of the block. So far as this record discloses neither Third street nor Fourth street has ever been opened up for traffic, at least south of the railway right of way.

"In 1870, one Henry Woodward became the owner by purchase of lot 3, and in 1877, he likewise became the owner of the west half of lot 2, in said block 3. He was engaged in the transportation business and made use of the property above described in connection therewith, built and maintained a dock on said Betsie bay, at the south end of said lots. He was agent for one of the transportation companies whose vessels, in the early days, stopped at this dock to load and unload both freight and passengers. Access to this dock was gained by using a drive or passageway over and across the east half of lot 3 in said block 3, running in a direct line north and south from said Main street to the dock. This drive or passageway was used by Mr. Woodward and the public until 1909 or 1910, and by the public from thence hitherto as a means of ingress and egress to and from said dock, until blocked by the action of the defendant in this case. No other means of access thereto was ever available and is not now.

"During the time said drive or passageway has been in use as aforesaid, some gravel and cinders have been placed thereon. The drive or passageway is wide enough for two vehicles to pass and has been in such condition during the period in which it has been used as a drive or passageway. The drive is well defined and has continued in one place all these years. A sidewalk has existed along this drive or passageway to facilitate passenger traffic to and from the dock in question.

"At the time of the death of Henry Woodward, his son, George Woodward, became the owner of the lands and premises above described. In the year 1921, George Woodward and his wife conveyed by warranty deed to the plaintiffs all that part of said lot 3 and the west half of lot 2, block 3, lying south of the Ann Arbor Railway right of way. And, in 1927, the said George Woodward and wife conveyed by warranty deed to Gilbert E. Ness all that part of said lot 3, block 3, lying north of the said Ann Arbor

Railway right of way. In 1928, Gilbert E. Ness conveyed by warranty deed to the defendant, Wash Crawford, the east 55 feet of said lot 3, block 3, lying north of said railway right of way. It is over and upon this 55 feet that the drive or passageway, the subject matter of this suit, extends.

"The defendant has been a resident of Frankfort for many years. His place of business, before he purchased the premises in question, was in plain view of this drive or passageway, and since he purchased this property, his place of business has been right alongside this drive or passageway. He has had actual knowledge for all the years of his residence in the village that this said drive or passageway was being used by the plaintiffs and the public in general as the only means of ingress and agress to and from Main street to the dock on Betsie bay and the place of business of the plaintiffs, and, further, that it had been so used long before the purchase of the property by the plaintiffs. He likewise had actual knowledge that this drive or passageway was the only means of ingress and egress that the plaintiffs had or now have to their place of business on Betsie bay.

"On or about the month of December, 1932, the said defendant asked for and obtained oral permission from the village council to remove and place upon his said 55 feet of lot 3, block 3, an old building, 24 feet by 35 feet in dimensions, but with the understanding that said building, when placed upon said lands, was not to encroach upon the said drive or passageway. Notwithstanding said condition, the defendant located said building across said drive or passageway, at the rear end of his said property, thus depriving the plaintiffs and the public of all access to their said business and the dock on the bay. Subsequently, the common council by record action thereof ordered said defendant to remove said building from said drive or passageway within

15 days. Defendant has made no move to comply with said order.

"In the paving of Main street, in the village of Frankfort, the public authorities left an opening in the curb of the pavement along Main street where this drive or passageway intersects, or enters the pavement on Main street.

"For over 30 years, during the lifetime of Henry Woodward and while he was the sole owner of the fee of and to said lands, this drive or passageway was in use by the public openly, continuously, notoriously, adversely and hostile to the rights of the owner of the fee. It was recognized and treated as a public way to and from the dock and business places on Betsie bay.

"Under the foregoing setting as to the facts, the plaintiffs contend that they have made out their case and are entitled to the relief prayed in their bill of complaint. In the judgment of the court, their claims are well founded both in law and fact. That this drive or passageway is a way of necessity, at least, can hardly be gainsaid or questioned, under the following authorities: *Moore* v. *White,* 159 Mich. 460 (134 Am. St. Rep. 735); *Bean* v. *Bean,* 163 Mich. 379; *Goodman* v. *Brenner,* 219 Mich. 55.

"Under the facts disclosed by this record, there was an implied dedication of the land embraced in this drive or passageway, to the extent to which use has been made by the public. Such was the foundation of this way or drive and it ripened into a way by user during the lifetime of Henry Woodward. The right to the use of a right of way may be acquired by prescription the same as title to the fee of lands. It was so brought to pass in this case within the following authorities: *Campau* v. *City of Detroit,* 104 Mich. 560; *Bean* v. *Bean, supra; Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14; *Douglas* v. *Jordan,* 232 Mich. 283 (41 A. L. R. 1437).

"A decree may be prepared to carry out the prayer of the bill of complaint."

It is insisted that the court was in error in finding that "no other means of access thereto was ever available, and is not now," and that the plaintiffs had an outlet to the street through what is spoken of as the Anderson property. The plaintiff Louis Rodal testified:

"Since this building was constructed across this roadway by the defendant, Crawford, I have no other means of getting out of my property other than over the land of other people. Mr. Anderson is allowing me to get out over his property because we cannot get out any other way. We never asked any permission, and are just driving across."

There was a roadway across this property and its use was permitted, but no right thereto was ever acquired, nor had it been used by plaintiffs before the obstruction was placed on the road in question.

The defense that plaintiffs have an outlet by the use of the water in the bay in front of their property was not raised upon the trial, nor does it appear in the reasons for appeal. I think it should not be considered, but, if it be, it seems apparent that the decisions quoted from by the Chief Justice should not be held to apply to the use of water which, as is well known, is frozen and may not be navigated except by large vessels during a number of months in each year.

The decree is affirmed, with costs to appellees.

NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with NELSON SHARPE, J.

POTTER, C. J. (*dissenting*). Plaintiffs filed a bill to have a drive or passageway established and declared to be a public highway by user or necessity.

Plaintiffs are engaged in commercial fishing on the Great Lakes. They own that part of lot 3, block 3, and the west half of lot 2, block 3, lying south of the railroad track, in the village of Frankfort. This property borders upon the Betsie bay, constituting the harbor at Frankfort, upon which, upon the water, is a dock and warehouse used in connection with plaintiffs' business.

Defendant is engaged in the taxi business in Frankfort, and in a small manufacturing business.

Henry Woodward purchased lot 3 in 1870, and the west half of lot 2 in 1877. He was engaged in the freight and transport business prior to the location of the Ann Arbor railroad in Frankfort, and upon the south line of this property (the waterfront on Betsie bay) built a warehouse and public dock prior to 1877, and improved a passageway north connecting with the main street of Frankfort, a distance of 15 or 20 rods, which roadway was used generally for the purpose of hauling freight, merchandise and produce and for the passage and repassage of passengers to and from the boats which tied up at Woodward's dock.

Henry Woodward died in 1909, and upon his death George Woodward became the owner of the lands in question. February 17, 1921, George Woodward and wife conveyed that part of lot 3 and the west half of lot 2, in block 3, south of the Ann Arbor railroad right of way, in the village of Frankfort, to plaintiffs. In 1925, they gave a contract to Gilbert Ness, and on December 14, 1927, conveyed to Ness that part of lot 3, block 3, lying north of the Ann Arbor railroad right of way, in the village of Frankfort. January 26, 1928, Ness, a single man, conveyed to Wash Crawford, defendant, the east 55 feet of lot 3,

block 3, lying north of the Ann Arbor railroad right of way.

There is no question but that Ness and Crawford, at the time they acquired the property north of the Ann Arbor railroad right of way, knew all about the property owned by plaintiffs, the dock, storehouse, and other purposes for which it had been used; and the road, public or private, that went to the docks and warehouse.

Defendant Crawford, about December 1, 1932, moved a building 24x30 feet in size on to the lands acquired by him, in such a location as to obstruct the passageway which had been used across plaintiffs' premises, the railroad right of way, and the premises acquired by defendant.

Plaintiffs ask that the passageway from the lands south of the railroad right of way north to the main street of the village of Frankfort be declared to be a public street or highway to the full extent of the used portion thereof, to-wit: two rods; the building or structure described in the bill of complaint, placed in the highway by defendant, be declared to be a public nuisance and abated; a decree be made confirming the right of plaintiffs to use the street or passageway over defendant's premises; an order entered compelling defendant Crawford to remove his building and obstruction from the roadway, and open the same up to the free and uninterrupted use of plaintiffs and the public, restraining defendant from preventing plaintiffs from having access to plaintiffs' premises, or impeding, or interfering with them in any way, and from obstructing or encroaching upon this claimed highway, or interfering with plaintiffs in the use of said road as a highway; and the injunction might upon final hearing be made permanent.

Defendant answered and contended that if Henry Woodward built the warehouse and public dock in the village of Frankfort, he did so for the conduct of his own business; if he used, and permitted the public to use, a passageway over the land now owned by defendant to the main street of the village of Frankfort, he did so for his own convenience and in furtherance of his own business. Defendant says the passageway over Woodward's property, and over the property of Ness, was private. He alleges his property is free and clear of any easement or highway; denies the passageway has been used openly, notoriously, continuously and adversely for a period of 50 years and upwards; denies the same is a public street established by user or otherwise; alleges the passageway has never been used for a public highway, but constituted a private highway for the owner of the dock and was only used for the purpose of the business of the Woodwards; alleges that any use made of the highway by the public was permissive only; denies he wilfully, wrongfully and maliciously blocked such passageway; and denies plaintiffs are entitled to the whole or any part of the relief prayed in their bill of complaint.

There was decree for plaintiffs, and from this decree defendant appeals, claiming his land may not be taken from him for highway purposes for the benefit of plaintiffs on the plea of necessity where their properties do not join, and plaintiffs have two passageways to their property: one over a road to a laid-out street, and the other by water; and, second, the passageway does not constitute a public highway because it has never been taken over, accepted, or maintained by the public.

So long as Henry Woodward owned all the land in question, and so long as his son, George Woodward,

owned the same, and used the so-called road or way in connection with their own business carried on at the dock, the public acquired no rights therein. "Permissive use can never ripen into title by prescription." *Menter* v. *First Baptist Church of Eaton Rapids*, 159 Mich. 21. The Woodwards could not establish a right of way over their own land separate and distinct from the title to the land itself. Title to the easement and the land would be merged. This land, they could do with as they saw fit, and the fact that those doing business with Henry Woodward or his son George, in connection with their dock on the navigable water of Betsie bay, were given the use of the road in connection with their business would not prevent such use from being permissive only (19 C. J. pp. 887–889; *Weber* v. *City of Detroit*, 159 Mich. 14 [36 L. R. A. (N. S.) 1056]; *Pastorino* v. *City of Detroit*, 182 Mich. 5 [Ann. Cas. 1916 D 768]; *Ann Arbor Fruit & Vinegar Co.* v. *Railroad Co.*, 136 Mich. 599 [66 L. R. A. 431]), and upon the discontinuance of the business, if it was discontinued, the Woodwards would have had a right to close the road.

"Where a land owner opens up a way on his own land for his own use and convenience, the mere use thereof by another, under circumstances which do not injure the road nor interfere with the owner's use of it, will not in the absence of circumstances indicating a claim of right, be considered as adverse, and will not ripen into a prescriptive right no matter how long continued." 19 C. J. p. 898.

The use of a way established by the owner of premises for his own use by others transacting business with him does not make its use by others than the owner other than permissive. *Shreve* v. *Mathis*, 63 N. J. Eq. 170 (52 Atl. 234); *Baxendale* v. *North*

*Lambeth Liberal and Radical Club, Ltd.* (1902), 2
Ch. 427 (71 L. J. Ch. 806, 18 T. L. R. 700, 87 L. T. R.
161, 50 W. R. 650).

If the use of this way in connection with the Wood-
wards' business constituted upon his or their part
an offer to dedicate the way to the public, still, in
order to constitute it a public highway, such offer
to dedicate must have been accepted by the public
either by some resolution upon the part of the vil-
lage of Frankfort or the township in which the land
was situated, or by such unequivocal acts upon the
part of the public authorities as to indicate they
treated it as a public highway. *Chapman* v. *City of
Sault Ste. Marie,* 146 Mich. 23; *South Branch Ranch
Co.* v. *Emery,* 191 Mich. 188; *Smith* v. *State High-
way Commissioner,* 227 Mich. 280; *Van Wieren* v.
*Macatawa Resort Co.,* 235 Mich. 606; *Murphey* v.
*Township of Lee,* 239 Mich. 551; *Snow* v. *Murphy,*
248 Mich. 659.

There is no claim this way was ever accepted by
the public authorities by any resolution, or that the
public authorities ever did any work upon it. Under
the well settled rule in this State, there was no ac-
ceptance thereof.

The important question is whether there was an
easement or private right of way over the premises.
So long as the Woodwards owned the land in ques-
tion, they had a right to sell the whole or any part
of it.

Easements are either continuous or discontinuous.
*Morgan* v. *Meuth,* 60 Mich. 238; *Zemon* v. *Netzorg,*
247 Mich. 563.

A right of way is a discontinuous easement and
does not pass on the severance of the two tenements
as appurtenant to the property conveyed. The qual-
ity or characteristic of continuousness does not be-
long to a right of way. *Hoffman* v. *Shoemaker,* 69

W. Va. 233 (71 S. E. 198, 34 L. R. A. [N. S.] 632);
*Morgan* v. *Meuth, supra; Zemon* v. *Netzorg, supra.*

An easement not of strict necessity will not pass
by an implied grant unless it is apparent and con-
tinuous, and no implication of a grant of a right of
way can arise from proof the land granted cannot
be conveniently occupied without it.    Its founda-
tion rests upon necessity and not upon convenience.
*Smith* v. *Griffin,* 14 Col. 429 (23 Pac. 905); *Carey* v.
*Rae,* 58 Cal. 159; *Kripp* v. *Curtis,* 71 Cal. 62 (11 Pac.
879); *M'Donald* v. *Lindall,* 3 Rawle (Pa.), 492;
*Cooper* v. *Maupin,* 6 Mo. 624 (35 Am. Dec. 456);
*Gayetty* v. *Bethune,* 14 Mass. 49 (7 Am. Dec. 188).

In *Carey* v. *Rae, supra,* it is said:

"Those circumstances show that he has a way,
which needs repair, and that until repaired it is im-
passable.    But the impassability of the road gives
to a party no right to an easement."

Plaintiff Otto Rodal testified:

"*Q.*   You say there is a road passing over to
Third street, isn't there, that you are using now?
"*Q.*   You are using this passageway over to
Third street, aren't you?
"*A.*   Yes, sir.
"*Q.*   That passageway has been there for years,
hasn't it, to Third street?
"*A.*   Yes, I think it has.
"*Q.*   That has been to Third street about the
same length of time as this passageway up to Main
street, hasn't it?
"*A.*   I don't know.
"*Q.*   It has been there as long as you can remem-
ber, hasn't it?
"*A.*   I think it has.
"*Q.*   And the public has used that?
"*A.*   It has not been good enough to use.    It is
not very good now, either.

"*Q.* But the public has used it for all these years getting over to Third street?

"*A.* Yes, I guess they have used it."

Gilbert E. Ness, the prior owner of the property, testified:

"*Q.* That Anderson property is private property?

"*A.* I wouldn't consider it so.

"*Q.* I am not asking you what you consider?

"*A.* I would say no.

"*Q.* Is it a public highway?

"*A.* It has been used as long as I can remember, 20 years or more.

"*Q.* Do you think the Anderson road is a public highway?

"*A.* I would think so.

"*Q.* This road we are speaking of has been used for a longer time than the Anderson road?

"*A.* I couldn't say as to that. I cannot remember back further than 20 years on it.

"*Q.* Was the Anderson road there 20 years ago?

"*A.* As far as I can remember, it was.

"*Q.* Maybe you cannot remember anything about it. Tell me when you ever traveled the Anderson road heretofore?

"*A.* I have driven over it a hundred times with my car."

Defendant Crawford testified:

"*Q.* Is there another passageway to Third street over which Mr. Rodal can go to his property?

"*A.* Yes, sir."

It appears in this case plaintiffs have a right over the so-called Anderson road to Third street, and strict necessity does not give them a right of way or easement over the lands of defendant. The fact the road to Third street is not in good repair does not

give plaintiffs a way of necessity over defendant's land.

Plaintiffs' land fronts on Betsie bay, navigable water constituting the harbor at Frankfort, a public highway, and defendant contends plaintiffs may have no way of necessity over his land though it may be more convenient for plaintiffs to pass over his land than using the waters of the bay to reach their premises.

When the land conveyed is surrounded on all sides but one by water and there is no access to it by land except over the grantor's land, there is not such a necessity as to raise an implied grant of the right of way over this land. Washburn's Easements and Servitudes (4th Ed.), p. 259.

The reasonable access to a highway over a navigable body of water prevents the maintenance of a way by necessity over the lands of another. 19 C. J. p. 923.

"The plaintiff has a navigable water course from his door to the public road or highway, by which the distance is not greater than by land; and although there may be some inconvenience in being obliged always to go by water when he visits his plantation, yet it is not greater than necessarily attends every insular situation, and perhaps not so great to him as it would be to his neighbour to keep up a lane through his plantation for his accommodation; and even if it were greater, it was one of which he was aware when he purchased (or those under whom he claimed), and may, therefore, be considered of his own creation." *Lawton* v. *Rivers,* 2 McCord (S. C.), 445 (13 Am. Dec. 741).

"The whole case then resolves itself into the question whether the plaintiff is entitled to a right of way from necessity? The necessity by which a person derives a right of way, is when one person sells

to another lands inclosed on all sides by other lands
\*   \*   \*   The right in such case must arise from
necessity.   \*   \*   \*   Suppose one person sell to another the extreme point of a neck or tongue of land
surrounded by an open sea or navigable streams,
except on one side, would it be understood that the
seller should allow him a right of way through the
whole neck of land, because it might sometimes be
more convenient for him to go to his farm by land
than by water? I should apprehend not. Much less
would he have a right to demand such a privilege
from the owners of the adjacent land who were not
parties to the contract   \*   \*   \*   The inconvenience
of going always by water to his farm would not
amount to such a necessity as would entitle him to
such a privilege." *Turnbull* v. *Rivers,* 3 McCord
(S. C.), 131 (15 Am. Dec. 622).

"It is maintained the defendant purchased the
land of Wyckoff with no other exit than this crossing;   \*   \*   \*   and his grantors had a right of way
by necessity to reach the highway.   \*   \*   \*   Owasco
Lake is a navigable body of water, permitting an
unimpeded way out over it, so we are not clear that
an easement by necessity exists in favor of defendant." *Burlew* v. *Hunter,* 41 App. Div. 148 (58 N. Y.
Supp. 453).

"It seems to me there is another insuperable objection to the defendant's claim. As stated, Irondequoit bay is a navigable body of water. When the
highways were extended to the bay and were readily
accessible by boats and steamers from the island, the
necessity for a way out over the lands of the plaintiff ceased. The reasonable access to a highway
over a navigable body of water prevents the maintenance of a passage by necessity over the lands of
another." *Bauman* v. *Wagner,* 146 App. Div. 191
(130 N. Y. Supp. 1016).

"In *Kingsley* v. *Gouldsborough Land Improvement Co.,* 86 Maine, 279 (29 Atl. 1074, 25 L. R. A.

502), it appeared that the land to which the way by necessity was claimed was surrounded on three sides by navigable water, that the owners had built a wharf and in the summer were accustomed regularly to run a steamboat two or three times a day between the premises and other places. It was held that there was no way by necessity over the adjacent land. In *Hildreth* v. *Googins,* 91 Maine, 227 (39 Atl. 550), the land in question bordered on the ocean, and it was ruled that in the absence of other evidence there was a presumption that the public highway over the water was available, and it was assumed that it would be competent to show by evidence that it was unavailable. In *Lawton* v. *Rivers,* 2 McCord (S. C.), 445 (13 Am. Dec. 741), and in *Turnbull* v. *Rivers,* 3 McCord (S. C.), 131 (15 Am. Dec. 622), the estate to which the way by necessity was claimed was an island, but at low tide there was a smooth hard strip of beach which had been used as a way, and which connected the island with the mainland. The access by water was easily available and reasonably convenient. It was held that there was no way by necessity over the land.'' *Feoffees of the Grammar School in Ipswich* v. *Proprietors of Jeffrey's Neck Pasture,* 174 Mass. 572 (55 N. E. 462).

''In the present case the defendants' land has navigable waters upon three sides of it. Over these waters there is a public right of travel. The defendants have the free use of these waters in going to and from their land. They have erected wharves and own a steamboat which during certain portions of the year runs several times each day between there and Bar Harbor, and as occasion requires to Winter Harbor on the east. To the latter place it is only three-quarters of a mile, by the way of the road or by water. It might oftentimes be more convenient to pass over a highway, or across the plaintiff's premises, than be subjected to the inconvenience of using the waters of the sea. But this

inconvenience is not such as the law requires to constitute a legal necessity for the way claimed." *Kingsley* v. *Gouldsborough Land Improvement Co.,* 86 Maine, 279 (29 Atl. 1074, 25 L. R. A. 502).

" 'Implied grants of this character are looked upon with jealousy, construed with strictness, and are not favored, except in cases of strict necessity, and not from mere convenience.' *Kingsley* v. *Gouldsborough Land Improvement Co.,* 86 Maine, 280 (29 Atl. 1074, 25 L. R. A. 502). In that case it was held by this court, that as free access to the land over public navigable waters existed, a way by necessity over the grantor's land could not be implied. The same rule applies here. Defendant's land borders on the ocean, a public highway, over which access to her land from the street can be had. It may not be as convenient as a passage by land, but necessity and not convenience is the test." *Hildreth* v. *Googins,* 91 Maine, 227 (39 Atl. 550).

"Ordinarily no right of way by necessity exists where the land to which such right of way is claimed borders on the sea; but if the way by water is unavailable to meet the requirements of the natural uses of the granted lands a way of necessity may be implied over adjoining lands of the grantor." 9 R. C. L. p. 771, § 31.

See, also, Jones on Easements, § 320.

Plaintiffs' bill of complaint alleges that Henry Woodward was engaged in the freight and transport business before the railroad was built to Frankfort, and upon the south line of plaintiffs' property, the waterfront on Betsie bay, which bay connects with Lake Michigan, built a warehouse and public dock; and small packets and hucksters arrived from or departed to ports on the Great Lakes, and tied up to, loaded and unloaded at such dock and warehouse.

Plaintiffs are engaged in commercial fishing on the Great Lakes. The waters of Betsie bay in front of plaintiffs' premises are navigable. The business of the Woodwards and of plaintiffs is based upon the use of such waters. Plaintiffs have access by the use of such navigable waters to the public streets of the village of Frankfort. No way of necessity over defendant's land exists.

Decree of the trial court should be reversed, with costs, and bill dismissed.